UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RODERICK K. THOMPSON, | ) | 1:10-cv-01984-LJO-JLT HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION RE: |
| | ) | RESPONDENT'S MOTION TO DISMISS |
| v. | ) | THE PETITION (Doc. 11) |
| | ) | |
| | ) | ORDER DIRECTING OBJECTIONS TO BE |
| JAMES D. HARTLEY, Warden, | ) | FILED WITHIN TWENTY DAYS |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**PROCEDURAL HISTORY**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The instant federal petition for writ of habeas corpus was filed on October 19, 2010.[1] (Doc. 1). In it, Petitioner alleges that he was convicted in 1981 in the Superior

---

[1] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), *amended* May 23, 2001, *vacated and remanded on other grounds sub nom*. Carey v. Saffold, 536 U.S. 214, 226 (2002); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th cir. 2003); Smith v. Ratelle, 323 F.3d 813, 816 n. 2 (9th Cir. 2003). The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003). Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature appears

1

Court of Kings County of one count of second degree murder and sentenced to a prison term of fifteen years to life.  (Doc. 1, p. 1; Ex. A, p. 26).  The petition raises three claims: (1) the Board of Parole Hearings ("BPH") violated Petitioner's right to due process when it found him not suitable for parole after a suitability hearing on March 2, 2009; (2) Petitioner's sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment; and (3) the BPH's decision to defer a subsequent parole hearing for three years pursuant to Proposition 9 violated the federal constitution's Ex Post Facto Clause.  (Doc. 1, pp. 4-22).

On November 23, 2010, the Court ordered Respondent to file a response.  (Doc. 6).  On January 25,  2011, Respondent filed a motion to dismiss the petition, contending that Ground One does not invoke the Court's habeas jurisdiction, that Ground Two is untimely, and that Ground Three should be dismissed for failure to establish a prima facie case.  (Doc. 11).  To date, Petitioner has not filed an opposition to the motion to dismiss.

## DISCUSSION

A.  Procedural Grounds for Motion to Dismiss

As mentioned, Respondent has filed a motion to dismiss the petition on the grounds of failure to state a claim, lack of exhaustion, and untimeliness pursuant to the one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1).  Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a motion to dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

---

on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation.  Petitioner signed the instant petition on October 19, 2010.  (Doc. 1, p. 24).

1  Thus, a Respondent can file a motion to dismiss after the court orders a response, and the Court
2  should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.
3         In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. §
4  2244(d)(1)'s one year limitation period, lack of exhaustion, and failure to state a claim upon which
5  habeas relief can be granted.  Because Respondent's motion to dismiss is similar in procedural
6  standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default
7  and Respondent has not yet filed a formal Answer, the Court will review Respondent's motion to
8  dismiss pursuant to its authority under Rule 4.
9         B.  Ground One Must Be Dismissed For Failure To State A Claim For Habeas Relief.
10        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
11 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas
12 corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063
13 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586
14 (1997).  The instant petition was filed on October 19,  2010, and thus, it is subject to the provisions
15 of the AEDPA.
16        In Ground One, Petitioner does not challenge either his conviction or sentence; rather,
17 Petitioner challenges the March 2, 2009 decision of the BPH finding him unsuitable for parole.
18 Petitioner contends that the BPH's decision was not supported by "some evidence" of current
19 dangerous and that there was no nexus between Petitioner's current dangerousness and the criteria
20 relied upon by the BPH.
21            1.  Substantive Due Process Claims And California's "Some Evidence" Standard
22        As discussed more fully below, Ground One in the petition sounds exclusively in substantive
23 federal due process and therefore is not cognizable in these proceedings.
24        The basic scope of habeas corpus is prescribed by statute.  Subsection (c) of Section 2241 of
25 Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless
26 he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a) states that the federal courts
27 shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in
28 custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §§

3

2254(a)(, 2241( c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S.Ct. 1495 (2000); Wilson v. Corcoran, 562 U.S. ___, 131 S.Ct. 13, 16 (2010); see also, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.  The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals has held that California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d 546, 561-563 (9th Cir.2010); Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010); Cooke v. Solis, 606 F.3d 1206, 1213 (2010), *rev'd*, Swarthout v. Cooke, ___ U.S.___, ___ S.Ct. ___, 2011 WL 197627 (Jan. 24, 2011).  The Ninth Circuit instructed reviewing federal district courts to determine whether California's application of California's "some evidence" rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

On January 24, 2011, the Supreme Court issued a *per curiam* opinion in Swarthout v. Cooke, 562 U.S.___, ___ S.Ct. ___, 2011 WL 197627 (No. 10-133, Jan. 24, 2011).  In that decision, the United States Supreme Court characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment's Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout, 2011 WL 197627, *2.

However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12, 99 S.Ct.

2100 (1979).[2]  Swarthout v. Cooke, 2011 WL 197627, *2.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  In doing so, the High Court stated as follows:

> There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  (Citation omitted.)  When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication–and federal courts will review the application of those constitutionally required procedures.  In the context of parole, we have held that the procedures requires are minimal.  In Greenholtz, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.  (Citation omitted.)

Swarthout, 2011 WL 197627, *2.

The Court concluded that the petitioners had received the due process to which they were due:

> They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied...
>
> That should have been the beginning and the end of the federal habeas courts' inquiry into whether [the petitioners] received due process.

Swarthout, 2011 WL 197627, *3.  The Court went on to expressly point out that California's "some evidence" rule is not a substantive federal requirement, and correct application of the State's "some evidence" standard is not required by the federal Due Process Clause.  Id. at *3.  The Supreme Court emphasized that "the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." Id.

Swarthout forecloses any claim premised upon California's "some evidence" rule because this Court cannot entertain substantive due process claims related to a state's application of its own laws.  Here, Ground One sounds exclusively in substantive due process and is therefore foreclosed by Swarthout.  Review of the record for "some evidence," or for a "nexus" between present

---

[2] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole and that due process is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made.  Id. at 15-16.  The decision maker is not required to state the evidence relied upon in coming to the decision.  Id.

5

1  dangerousness and certain indicia, or reliance upon the circumstances of the commitment offense to
2  support denial of parole, are issues that simply are not within the scope of this Court's habeas review
3  under 28 U.S.C. § 2254. Accordingly, Ground One should be summarily dismissed.

4  Moreover, to the extent that Ground One rests solely on state law, it is not cognizable on
5  federal habeas corpus. Federal habeas relief is not available to retry a state issue that does not rise to
6  the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. ___, 131 S.Ct. 13, 16
7  (2010); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). Alleged errors in the
8  application of state law are not cognizable in federal habeas corpus. Souch v. Schiavo, 289 F.3d
9  616, 623 (9th Cir. 2002). Indeed, federal courts are bound by state court rulings on questions of state
10 law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).[3]

### 2. Procedural Due Process

12 Petitioner has neither claimed nor established a violation of his federal right to procedural
13 due process. Petitioner has included a transcript of the BPH's March 2, 2009 hearing. (Doc. 1, p. 57
14 et seq.). From that transcript, it is clear that Petitioner was present at the BPH hearing (id.), that he
15 had an opportunity to be heard (e.g., id., pp. 102-122), that he was represented by counsel who also
16 attended the hearing and argued on Petitioner's behalf (e.g., id., pp. 124-128), and that Petitioner
17 received a statement of the Board's reasons for denying parole. (Doc. 1, pp. 130-140).

18 According to the Supreme Court, this is "the beginning and the end of the federal habeas
19 courts' inquiry into whether [the prisoner] received due process." Swarthout, 2011 WL 197627.
20 "The Constitution does not require more [process]." Greenholtz, 442 U.S. at 16. Therefore, the
21 instant petition does not present cognizable claims for relief and should be summarily dismissed.

22  C. Ground Two Is Untimely.

23  1. Issue-Specific Timeliness Under The AEDPA.

24 The issue of how to analyze timeliness under the AEDPA when individual claims vary as to
25 timeliness has split the federal circuits. Compare Walker v. Crosby, 341 F.3d 1240 (11th Cir.
26 2003)("the statute of limitations in § 2244(d)(1) applies to the application as a whole; individual

---

[3] As discussed above, to the extent that Ground One relies exclusively on state law, it is not cognizable in federal habeas proceedings. Accordingly, the Court sees no need to address Respondent's further argument that, because Ground One is not exhausted because it was not presented to the California Supreme Court as a federal, rather than state, law issue.

claims within an application cannot be reviewed separately for timeliness."), with Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004)("If § 2244(d)(1) is applied, as we believe it must be, on a claim-by-claim basis, there is not problem, but if, as the Walker interpretation prescribes, the claim-by-claim approach is rejected, there is nothing in § 2244(d)(1) that provides a ground for picking one [starting] date over the other."); see Beckman v. Bagley, 487 F.3d 979 (6th Cir. 2007)(following Fielder).

       The Ninth Circuit has not decided the issue; however, numerous federal district courts within the Ninth Circuit have chosen to follow Fielder. E.g., Green v. Cal. Dept. Of Corr., 2009 WL 393780 at *4 (C.D. Cal. Feb. 17, 2009); Nussbaum v. Salazar, 2008 WL 5377996 at *9-10 (C.D. Cal. Dec. 22, 2008); Metcalf v. Vasquez, 2008 WL 780636 at *3 (C.D. Cal. March 24, 2008); Murphy v. Idaho, 2007 WL 1959055 at *1-2 (D. Idaho July 3, 2007); Loomis v. Blades, 2006 WL 2265260 at *1-2 (D. Idaho Aug. 8, 2006); Cunningham v. Blades, 2006 WL 666307 at *2 (D. Idaho March 13, 2006); Murphy v. Espinoza, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005).

       More to the point, the United States Supreme Court has suggested that the Third Circuit's approach is the appropriate method of analysis. In Pace v. DiGuglielmo, 544 U.S. 408, 416 n. 6, 125 S.Ct. 1807 (2005), the high court stated as follows:

> [Section] 2244(d)(1) provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus." (Emphasis added.) The subsection then provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A)(date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(c) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).

The above language clearly points toward the Fielder approach rather than the Eleventh Circuit's approach. Given the weight of authority favoring the claim-by-claim approach, the Court will employ that methodology in analyzing the timeliness of the claims in the instant petition. Thus, since Grounds One and Three concern the 2009 BPH hearing, they are timely. Ground Two, however, relates to Petitioner's sentencing in 1981, and Respondent has challenged its timeliness under the AEDPA. Accordingly, the Court will address timeliness only as it relates to Ground Two.

                2.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

    The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d)

reads:

>   (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final.  The AEDPA, however, is silent on how the one-year limitation period affects cases where direct review concluded *before* the enactment of the AEDPA.  The Ninth Circuit has held that if a petitioner whose review ended before the enactment of the AEDPA filed a habeas corpus petition within one year of the AEDPA's enactment, the Court should not dismiss the petition pursuant to § 2244(d)(1).  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283,1286 (9th Cir.), *cert. denied*, 118 S.Ct. 899 (1998);  Calderon v. United States Dist. Court (Kelly), 127 F.3d 782, 784 (9th Cir.), *cert. denied*, 118 S.Ct. 1395 (1998).   In such circumstances, the limitations period would begin to run on April 25, 1996.  Patterson v. Stewart, 2001 WL 575465 (9th Cir. Ariz.).

Here, Petitioner provides no information regarding his direct appeal from the 1981 conviction.  However, the Court agrees with Respondent that it is a virtual certainty that Petitioner's direct appeal concluded at some point between 1981 and April 25, 1996.  Thus, Petitioner's one-year AEDPA period would have commenced on April 25, 1996 and would have expired, unless tolled, on April 25, 1996.

As mentioned, the instant petition was filed on October 19, 2010, more than thirteen years

8

after the date the one-year period would have expired.  Thus, unless Petitioner is entitled to either statutory or equitable tolling, Ground Two is untimely and should be dismissed.

### 3.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations.  Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000).  An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations omitted); see Evans v. Chavis,  546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Nevertheless, there are circumstances and periods of time when no statutory tolling is allowed.  For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time.  Nino, 183 F.3d at 1006-1007; Raspberry v. Garcia, 448 F.3d 1150, 1153 n. 1 (9th Cir. 2006).  Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition.  Id. at 1007. In addition, the limitation period is not tolled during the time that a federal habeas petition is pending.  Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002).  Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the re-initiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001).  Finally, a petitioner is not entitled to

continuous tolling when the petitioner's later petition raises unrelated claims. See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

Here, the documents submitted by Respondent in conjunction with the motion to dismiss and by Petitioner in his petition establish that Petitioner filed the following state habeas petitions regarding Ground Two: (1) filed in the Kings County Superior Court on July 1, 2009 and denied on September 2, 2009 (Doc. 1, Ex. G); (2) filed in the California Court of Appeal, Fifth Appellate District ("5th DCA") on September 18, 2009 and denied on January 14, 2010 (id., Ex. G); and (3) filed in the California Supreme Court and denied on September 15, 2010. (Id., Ex. I).

However, none of these state habeas petitions entitle Petitioner to statutory tolling under the AEDPA because the petitions were all filed after the one-year period had expired. A petitioner is not entitled to tolling where the limitations period has already run prior to filing a state habeas petition. Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000); Jiminez v. Rice, 276 F.3d 478 (9th Cir. 2001); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)(same); Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jackson v. Dormire, 180 F.3d 919, 920 (8th Cir. 1999) (petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitations period). Here, as mentioned, the limitations period expired on April 25, 1996, approximately thirteen years *before* Petitioner filed his first state habeas petition. Accordingly, he cannot avail himself of the statutory tolling provisions of the AEDPA.

4.  Equitable Tolling

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. See Holland v. Florida, __U.S.__, 130 S.Ct. 2549, 2561 (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997). The limitation period is subject to equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal quotation marks and citations omitted). "When  external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland, 2010 WL 2346549 at *12; Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted). As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

Here, Petitioner has made no express claim of entitlement to equitable tolling and, based on the record now before the Court, the Court sees no basis for such a claim. Accordingly, Petitioner is not entitled to equitable tolling. Thus, Ground Two is untimely and should be dismissed.

D. Ground Three Does Not State A Habeas Claim For Violation Of The Ex Post Facto Clause.

In Ground Three, Petitioner contends that Proposition 9, which permits the BPH to delay an inmate's next parole hearing for up to fifteen years, is a violation of the Ex Post Facto clause of the federal constitution. Respondent contends that the claim fails to state a prima facie case.

"The States are prohibited from enacting an ex post facto law." Garner v. Jones, 529 U.S. 244, 249 (2000)(citing U.S. Const., art. I, § 10, cl. 1). "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Id. Although retroactive changes in laws governing parole of inmates may violate the Ex Post Facto Clause, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." Id. at 250. A retroactive procedural change violates the Ex Post Facto Clause when it "creates a significant risk of prolonging [an inmate's] incarceration." Id. at 251. A "speculative" or "attenuated" risk of prolonging incarceration is insufficient to establish a violation of the Ex Post Facto Clause. Cal. Dept. Of Corr. V. Morales, 514 U.S. 499, 509 (1995). Thus, in order to establish an Ex Post Facto Clause violation, (1) an inmate must show that Proposition 9, on its face, creates a significant risk of increasing the punishment of California life-term inmates, or (2) the inmate must "demonstrate, by evidence drawn from [Proposition 9's] practical implementation...that its retroactive application will result in a longer period of incarceration than under the [prior law]." Garner, 529 U.S. at 255.

Prior to the enactment of Proposition 9, California law required that a state inmate receive an annual parole hearing unless, when certain circumstances were present, the BPH scheduled the hearing for between two and five years hence. Cal. Pen. Code § 3041.5(b)(2). In 2010, Proposition 9 amended California law to eliminate the annual parole hearing and permit the BPH to schedule future hearings between three and fifteen years hence. Cal. Pen. Code § 3041.5(b)(3)(2010).

In Gilman v. Schwarzenegger, 2011 WL 198435 (9th Cir. Jan. 24, 2011), the Ninth Circuit rejected an inmate's ex post facto challenge to Proposition 9. After noting that "Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole," the Court went on to consider the effect of the greater delays between parole hearings on the inmate's period of incarceration, and concluded that no federal violation occurred:

> Even assuming, without deciding, that the statutory changes decreasing the frequency of scheduled hearings would create a risk of prolonged incarceration, the availability of advance hearings is relevant to whether the changes in the frequency of parole hearings create a significant risk that prisoners will receive a greater punishment. Garner, 529 U.S. at 256-257; Morales, 514 U.S. at 512.
> ...
> Here, advance hearings are explicitly made available by statute: 'The board may in its discretion...advance a hearing...to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner.' Cal. Penal Code § 3041.5(b)(4). The Board may exercise its discretion to hold an advance hearing sua sponte or at the request of a prisoner. A prisoner may request an advance hearing by submitting a written request that 'set[s] forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration." Id. § 3041.5(d)(1). The Board's decision to deny a prisoner's request for an advance hearing is subject to judicial review. Id. § 3041.5(d)(2). Here, as in Morales, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing. 514 U.S. at 513.

Gilman, 2011 WL at *5-6.

The Ninth Circuit concluded that "[t]here were no facts in the record from which the district court could infer that Proposition 9 created a significant risk of prolonging Plaintiff's incarceration." Id. at * 8. Accordingly, Petitioner's claim to the contrary is summarily rejected and hence Ground Three should be summarily dismissed for failure to state a cognizable habeas claim.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss (Doc. 11), be GRANTED and the habeas corpus petition be DISMISSED for the reasons set forth above.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 9, 2011**                                            /s/ Jennifer L. Thurston
                                                                                   UNITED STATES MAGISTRATE JUDGE